IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

RICHARD HERRERA,

         *Defendant*.

CRIMINAL ACTION
NO. 15-00022

MEMORANDUM

**PAPPERT, J.**                                                                                                                                          June 5, 2015

Richard Herrera ("Herrera")[1] has been charged with possession with intent to distribute more than 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1). Herrera moves to suppress all evidence gathered from his residence pursuant to a search warrant issued by a Philadelphia County Common Pleas Court judge. Herrera contends that the affidavit upon which the warrant application was based lacked information sufficient to support a finding of probable cause. The Court held an evidentiary hearing and oral argument on Herrera's motion on June 1, 2015. For the reasons set forth below, the motion is denied.

I.

The search warrant and attached affidavit of probable cause comprise the only exhibit admitted into evidence at the hearing. (Hr'g Tr. 15:24-16:7, 20:18, 37:22-38:1 June 1, 2015 (admitting into evidence Government Exhibit Motion-1 ("Ex. 1")).) According to the affidavit, agents from the Federal Bureau of Investigation (FBI) and officers from the Philadelphia Police Department (collectively "agents") began surveilling Herrera approximately one-and-a-half

---

[1]     Herrera has also been known as German Suarez-Arzon, Hiram Miguel Santana-Cintron, and Jose Manuel Diaz Rafael. (*See* Indictment, ECF No. 1.)

months prior to his arrest and the issuance of the search warrant. (Ex. 1 at 1-2.) The surveillance began when "FBI Task Force C3" arrested a fugitive named Fabio Rondon-Jose on August 21, 2014. (*Id*. at 2.) When arrested, Rondon-Jose was in possession of a box "filled with numerous smaller brown boxes of blue glassine inserts and new/unused clear ziplock packets" which are items "commonly used in the packaging of heroin for street sale." (*Id*.) Rondon-Jose told the agents, including Philadelphia Police Officer and Task Force Agent Charles Myers ("Agent Myers"), that he was taking the drug paraphernalia to an "area of Tyson and Boulevard to a Dominican male only known as Richard." (*Id*.) The agents took Rondon-Jose to that area of the city, and he pointed out 2232 Tyson Street as the location where he was to meet Richard. (*Id*.) Rondon-Jose further stated that "Richard was a known heroin distributor in the city and county of Philadelphia." (*Id*.) Thereafter, the agents set up surveillance of 2232 Tyson Street.[2] (*Id*.)

Over the next several days, agents received further information on Herrera from a "reliable" confidential informant ("CI") who had previously "provided detailed and specific information on illegal activity resulting in several arrests." (Ex. 1 at 2.) The CI confirmed that a Dominican male named Richard Herrera, also known as German Suarez, was a known heroin distributor operating in Philadelphia. (*Id*.) The CI stated that Herrera was previously arrested and convicted for heroin distribution in Philadelphia. (*Id*.) The CI further detailed that Herrera was known to drive two dark-colored Chrysler vehicles with Pennsylvania license plates JNH-4412 and JPF-6385. (*Id*.) The CI positively identified Herrera from a photograph. (*Id*.)

The agents confirmed that Herrera had been arrested for heroin distribution in 2009, and found his two suspected vehicles parked "just east" of 2232 Tyson Street on the block of 6900 Leonard Street. (Ex. 1 at 2.) One day, during the course of his surveillance, Agent Myers

---

[2] The address for Herrera's residence is interchangeably referred to as 2232 Tyson Street and 2232 Tyson Avenue in the affidavit of probable cause. (Ex. 1 at 2-3.)

observed Herrera sitting in the driver's seat of the Chrysler with license plate JPF-6385. (*Id*.) Agent Myers followed the vehicle until it returned to 6900 Leonard Street. (*Id*.) Agent Myers observed Herrera exit the car and proceed down the alleyway[3] behind 2232 Tyson Street, although Agent Myers could not see whether Herrera entered the house. (*Id*.) The next day, however, upon traveling down the alleyway, Agent Myers observed Herrera standing in the yard of 2232 Tyson Street before entering the house directly. (*Id*.)

On the morning of October 8, 2014, Agent Myers observed Herrera walking down the Tyson Street alleyway "with both hands inside of his jacket pockets." (Ex. 1 at 2.) Herrera stopped walking to watch Agent Myers as he passed by and turned north at the end of the alleyway. (*Id*.) Agent Myers made a u-turn and watched Herrera walk south towards the 2200 block of Glenview Street. (*Id*.) Once there, Agent Myers observed two unknown Dominican males exit a gold Honda and meet with Herrera. (*Id*.) Agent Myers saw Herrera remove a large object from his right jacket pocket and hand it off to the driver of the gold Honda. (*Id*.) The two males from the gold Honda then ran into 2225 Glenview Street. (*Id*.) Agent Myers followed Herrera as he walked back to the Tyson Street alleyway. (*Id*.) Herrera began running when he reached the entrance of the alleyway. (*Id*.) Agent Myers circled the block, but could no longer locate Herrera. (*Id*.) "Based on the information received from [Rondon-Jose], the CI and the manner in which Herrera had his hands clenched in his pockets and was acting while believing he was followed," Agent Myers concluded that he observed a narcotics transaction between Herrera and the males in the gold Honda. (*Id*.)

---

[3] The affidavit of probable cause interchangeably refers to the alleyway running behind the 2200 block of Tyson Street as an "alley way" and "rear driveway." (Ex. 1 at 2-3.) This alleyway was large enough that a vehicle could drive down it. (*See id*. at 2 (describing Agent Myers driving down the alleyway in the course of surveilling 2232 Tyson Street).)

3

The agents established surveillance on 2225 Glenview Street in addition to 2232 Tyson Street. (Ex. 1 at 2.) At 12:01 p.m., agents observed a Dominican female appear at the door of 2225 Glenview Street as a black Acura with tinted windows pulled up. (*Id.*) A third Dominican male exited the Acura carrying a plastic bag with square-shaped objects that were consistent in appearance with the boxes of drug paraphernalia recovered from Rondon-Jose. (*Id.*) The female and third Dominican male entered 2225 Glenview Street together. (*Id.*)

Around 2:09 p.m., agents watched as a third car, a burgundy Honda, pulled up to 2225 Glenview Street. (Ex. 1 at 3.) This particular vehicle and its driver were recognized by agents as part of a separate ongoing heroin investigation. (*Id.*) The driver was met at the door of 2225 Glenview Street by the third Dominican male from the black Acura. (*Id.*) Both men proceeded into 2225 Glenview together. (*Id.*) The third Dominican male from the black Acura subsequently reappeared at the door of 2225 Glenview Street and let a fourth unknown Dominican male into the property. (*Id.*) In the affidavit, Agent Myers asserts that "[b]ased on the information from [Rondon-Jose], the CI, today's observations detailed above and your affiant[']s training/experiences in this type of investigation[,] your affiant believes the group of Dominican males in 2225 Glenview St[reet] are working a 'Table'[—s]treet slang for a packaging mill. This is where heroin is packaged [into] bundles for street sale." (*Id.*)

The concluding paragraph of the affidavit states that, at 5:30 p.m., while Agent Myers was preparing the warrant, he received word that Herrera and another Dominican male, later identified as Elias Reyes, directly exited from the rear of 2232 Tyson Street. (Ex. 1 at 3.) After looking in the direction of two unmarked police cars, Herrera turned to Reyes, yelled something in Spanish, and motioned for him to "get out of here."[4] (*Id.*) Both men split up in different directions, but

---

[4] The affidavit of probable cause actually states that "Herrera then turned around to [the unknown Dominican male] and motion [sic] and yelled to 'get out of here'." (Ex. 1 at 3.) At the suppression hearing, Agent Myers

4

were stopped by agents. (*Id.*) Several hundred dollars and cell phones were recovered from the men. (*Id.*)

Based on this affidavit of probable cause, Common Pleas Court Judge Daniel J. Anders approved warrants to search both 2232 Tyson Street and 2225 Glenview Street. (Ex. 1.) In 2232 Tyson Street, agents found over 770 grams of heroin bundled both in bulk and smaller packets, various drug paraphernalia, and an operational but unloaded firearm. (Mot. Suppress Ex. B (Arrest Report); Opp'n to Mot. Suppress 9-10.)[5] Herrera was indicted on January 21, 2015 for one count of possession with intent to distribute more than 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1.)

On June 1, 2015, the Court held a suppression hearing and heard oral argument from the parties. (ECF No. 31.) At the hearing, Agent Myers testified to the facts of the investigation as recounted above. In addition, Agent Myers stated that he has been a law enforcement officer for 16 years, with 12 of those years being dedicated to narcotics investigations. (Hr'g Tr. 11:9-13, 13:11-13.) He also explained that over the course of his career in narcotics, Agent Myers has been involved in over 1,000 arrests, over 2,000 investigations, and has been certified as an expert

---

explained that he was in the process of preparing the affidavit while listening over his police radio when Herrera exited 2232 Tyson Street. (Hr'g Tr. 19:3-9 June 1, 2015.) Agent Myers made this clarification:

> The way it was described to me over the radio was that Mr. Herrera saw narcotic – saw unmarked vehicles, turned, and motioned in a manner, saying, get out of here. I took it as verbal words being spoken to a codefendant, get out of here. I was incorrect, and that – later described to me as a waving motion and something being said in Spanish which they could not understand.

(*Id.* at 19:10-18.) With this clarification, Agent Myers testified that the affidavit was true and correct. (*Id.* at 19:21-23.)

[5] During the simultaneous execution of the search warrant at 2225 Glenview Street, agents interrupted three individuals in the midst of a "table" packaging operation. (Mot. Suppress Ex. B (Arrest Report); Opp'n to Mot. Suppress 11-12.) Just under 100 grams of heroin was recovered, along with drug paraphernalia matching the drug paraphernalia found in 2232 Tyson Street. (*Id.*)

5

in the area of narcotics and narcotics investigations in both state and federal courts. (*Id*. at 14:3-5, 15-18.)

## II.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. For a search to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause. *See United States v. Burton,* 288 F.3d 91, 102 (3d Cir. 2002) (citing *Payton v. New York,* 445 U.S. 573, 586 (1980)). An issuing judge, such as Judge Anders here, may find probable cause when "viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Hodge,* 246 F.3d 301, 305 (3d Cir. 2001) (citing *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). The judge "is to make a practical, commonsense decision," *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (quotation omitted), and "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Hodge,* 246 F.3d at 305-06 (3d Cir. 2001) (quotation omitted). "The issuing judge may also give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *Whitner*, 219 F.3d at 296 (quotation omitted). Furthermore, direct evidence linking the crime to the location to be searched is not required to support a search warrant. *Id*. at 297. Instead, the issuing judge can infer probable cause by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment, and normal inferences about where a criminal might hide contraband or stolen property." *Id*. (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993)).

In evaluating the issuing judge's probable cause determination, the Court conducts a deferential review, *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (citing *Gates,* 462 U.S. at 238-39), and considers only the facts that were before the issuing authority, *i.e.*, facts contained in the affidavit of probable cause. *Jones,* 994 F.2d at 1055. Importantly, the Court does not decide probable cause *de novo,* but rather determines whether the affidavit provides a "substantial basis" to support the conclusion that probable cause existed. *Stearn*, 597 F.3d at 554; *see also Gates*, 462 U.S. at 238. If a substantial basis exists to support the probable cause finding, the Court must uphold that finding even if it or a "different magistrate judge might have found the affidavit insufficient to support a warrant." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993). Although the district court should not simply "rubber stamp" the issuing judge's conclusions, *Whitner*, 219 F.3d at 296 (citing *Jones*, 994 F.2d at 1055), the Supreme Court has directed that "doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Stearn*, 597 F.3d at 554 (citing *Gates,* 462 U.S. at 237 n.10). The defendant bears the burden of establishing that his Fourth Amendment rights were violated. *United States v. Acosta,* 965 F.2d 1248, 1257 n.9 (3d Cir. 1992) (citing *Rakas v. Illinois,* 439 U.S. 128, 130 n.1 (1978)).

## III.

The Third Circuit has long recognized that "[i]n the case of drug dealers . . . evidence of involvement in the drug trade is likely to be found where the dealers reside." *Whitner*, 219 F.3d at 297; *see also Stearn*, 597 F.3d at 558. Thus, when the crime under investigation is drug distribution, an issuing judge may infer that a suspected drug dealer is storing evidence of his drug crimes in his residence if three preliminary premises are met:

> (1) that the person suspected of drug dealing is actually a drug dealer;

7

> (2) that the place to be searched is possessed by, or the domicile of, the dealer; and
>
> (3) that the home contains contraband linking it to the dealer's activities.

*Stearn*, 597 F.3d at 559 (citing *Burton*, 288 F.3d at 104). Herrera contends that Judge Anders did not have evidence supporting the first and third prongs of the *Burton* test and thus did not have a substantial basis to conclude that probable cause existed. (Mot. Suppress 9; Hr'g Tr. 67:13-71:4).[6]

*First*, the affidavit of probable cause provided support for the premise that Herrera was actually a drug dealer. The affidavit states that agents were told by Rondon-Jose that Herrera was "a known heroin distributor in the city and county of Philadelphia." (Ex. 1 at 2.) The information was corroborated by a reliable CI, who added that Herrera was "previously arrested and convicted for heroin distribution in Philadelphia." (*Id.*) The agents later verified that Herrera had indeed been arrested for heroin distribution in 2009. (*Id.*) Finally, Agent Myers observed Herrera engage in a street handoff on October 8, 2014, which Agent Myers believed to be a "narcotics transaction." (*Id.*) This collective information provided more than enough support for the judge to conclude that Herrera was actually a drug dealer. *See Stearn*, 597 F.3d at 563 (finding "the affidavit provided powerful evidence that Joseph Doebley was a drug dealer" because "the affidavit detailed an informant's tip that Joseph Doebley was a drug dealer" and "[p]olice then confirmed Joseph Doebley's involvement in two drug transactions").

---

[6] Although Herrera argued that only the third prong of the *Burton* test was lacking in his motion papers, defense counsel took the position at oral argument that neither the first nor third prongs were met. (*Compare* Mot. Suppress 9 (arguing that the affidavit did not establish a nexus between Herrera's home and the crime under investigation) *with* Hr'g Tr. 67:13-20 ("[Prong] One is that the person suspected of drug dealing is actually a drug dealer. There's no evidence here that Mr. Herrera is actually a drug dealer.") *and* Hr'g Tr. 70:7-9, 21-22 ("But then the third [prong] is that the home contains contraband linking to the dealer's activities. . . . We don't have a single fact in this affidavit of probable cause to state that.").) The Court will therefore consider prongs one and three in its analysis.

8

*Second*, the affidavit contained sufficient support for the premise that 2232 Tyson Street contained contraband linking it to Herrera's drug activities. The clearest support for this premise is that, upon his arrest, Rondon-Jose confessed to the agents that he was scheduled to deliver the brown boxes, glassine inserts and ziplock packets to Herrera at 2232 Tyson Street. (Ex. 1 at 2.) The agents' subsequent investigation, including the information obtained from the reliable CI and their first-hand surveillance, substantially corroborated Rondon-Jose's statements regarding the location of Herrera's home and his drug activities. (*Id.*) Furthermore, the issuing judge was entitled to conclude from Agent Myers' observations that Herrera departed from his home prior to executing the suspected narcotics transaction on October 8, 2014, and returned there after the transaction was complete. Agent Myers did not directly see Herrera's entry or exit; he first spotted Herrera walking in the alleyway behind his house and, after the suspected narcotics transaction, followed Herrera on his return walk towards 2232 Tyson Street until Herrera ran down the same alleyway. (*Id.*) However, when making a probable cause determination, the issuing judge "is entitled to draw reasonable inferences," and the "supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner." *Hodge*, 246 F.3d at 305-06; (quotation omitted); *Whitner*, 219 F.3d at 296 (quotation omitted). Given that the affidavit states that Herrera was seen entering and exiting 2232 Tyson Street on other occasions, and considering that on his return trip Herrera was running back towards 2232 Tyson Street and that Agent Myers lost sight of Herrera once he entered the alleyway behind Tyson Street, it was reasonable for Judge Anders to infer that Herrera was returning to 2232 Tyson Street. The Third Circuit has found that such behavior supports the premise that Herrera was keeping contraband in his home. *See Burton*, 288 F.3d at 104 ("While we generally accept the common sense proposition that drug dealers often keep evidence of their transactions at home, that inference is much stronger when

9

the home is the first place a drug dealer proceeds following such a transaction.") (citation omitted); *United States v. Majeed*, No. 08-cr-186, 2009 WL 2393921, at *9 (E.D. Pa. Aug. 4, 2009) ("The fact that Gandy returned directly to these residences immediately after apparently engaging in trafficking-related activities lends credence to the troopers' belief that contraband was likely to be found at those residences."); *accord Stearn*, 597 F.3d at 564 ("In addition, Joseph Doebley apparently slept at 4049 Higbee the evening after he collected proceeds from a drug sale, suggesting the possibility that he entered the residence with drugs or drug-sale proceeds on his person.").

The affidavit also stated that 2232 Tyson Street was within walking distance of 2225 Glenview Street, that Herrera traveled between the two houses, and a "hubbub of activity" sprang up at 2225 Glenview after Herrera's suspected narcotics transaction outside of the house, leading Agent Myers to conclude that a table operation was being set up at 2225 Glenview Street. (Ex. 1 at 2-3; Hr'g Tr. 85:4.) The issuing judge could have inferred that the large package Herrera dropped off at Glenview was drugs (to be parceled by the table operation), and that Herrera had brought these drugs from his home at 2232 Tyson Street. *See United States v. Smith*, 352 F. App'x 709, 712 (3d Cir. 2009) ("The proximity of Smith's residence to his drug activities, and the fact that he shuttled back and forth between [his residence at] 136 East Pleasant Street and the site of controlled buys and his own suspected sale of cocaine, satisfied the third prong of the *Burton* test."). Considering all of this evidence and based upon the totality of the circumstances, there was sufficient support for the judge to believe that Herrera's home at 2232 Tyson Street contained contraband linking it to Herrera's drug activities. Because the three *Burton* prongs are met here,

the judge had a substantial basis for finding that there was probable cause to search 2232 Tyson Street.[7]

At oral argument, Herrera's counsel contended that it was not reasonable for the issuing judge to credit the conclusions drawn by Agent Myers' in the affidavit because Agent Myers did not explicitly list all of the details of his training and experience. (Hr'g Tr. 51:7-54:15.) The affidavit states in general terms that Agent Myers had experience and training in drug investigations. (*See* Ex. 1 at 2 (Agent Myers was a member of FBI Task Force C3); *id*. at 3 (Agent Myers had "training/experience in this type of investigations [sic]").) The affidavit also includes descriptions of events consistent with one who has experience in drug investigations. (*See, e.g.*, *id*. at 2 ("All [these] items are commonly used in the packaging of heroin for street sale."); *id*. at 3 ("'Table' [is s]treet slang for a packaging mill. This is where heroin is packaged [into] bundles for street sale.").) Counsel argued these general descriptions were not enough for the judge to give credence to Agent Myers' conclusions, as he would otherwise be entitled to do under *Whitner*. *See* 219 F.3d at 296 ("The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found").

The argument is unpersuasive. Herrera has identified no authority for the proposition that a law enforcement officer must include a detailed list of his or her every qualification in an

---

[7] As the Court described above, *see supra* note 6, Herrera does not challenge the second prong of the *Burton* test, *i.e.*, whether 2232 Tyson Street was possessed by Herrera or Herrera's domicile. (*See also* Hr'g Tr. 70:3-6 (argument by defense counsel that "yes, [2232 Tyson Street is] his place of domicile and residence. So, you know, that one I think is a wash.").) The Court notes, however, that there was sufficient support in the affidavit for the premise that Herrera did indeed reside at 2232 Tyson Street. The agents' surveillance revealed that Herrera had access to 2232 Tyson Street, that he was seen coming and going from the house, and that he parked his cars in close proximity to the house. (Ex. 1 at 2-3.) This is an adequate basis from which Judge Anders could infer that Herrera resided, or at least had possession of, 2232 Tyson Street. *See United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002) ("[T]he best evidence that the North Garnet Street property was Burton's was that he parked his Maxima in close proximity to the house."); *United States v. Majeed*, No. 08-cr-186, 2009 WL 2393921, at *8 (E.D. Pa. Aug. 4, 2009) (finding the second *Burton* prong met because "the troopers' surveillance revealed that Gandy had access to and was often located at both residences and, on at least two occasions, returned to those residences following the completion of drug-related activities.").

affidavit of probable cause before an issuing judge can accept the officer's conclusions under *Whitner*. Indeed, the Third Circuit in *Whitner* stated that the issuing judge could credit the conclusions of "experienced law enforcement officers" despite the fact that the affidavit examined there contained only general averments of the officer's experience. *See* 219 F.3d at 292 (affidavit stating that Anthony Rivotti was "a Task Force Officer" with "training" and "experience"). Moreover, at least one other federal court has considered and rejected such an argument. *See United States v. Sarras*, No. 6:07-cr-92, 2007 WL 3231797, at *6-7 (M.D. Fla. Oct. 30, 2007) ("Here, Defendant challenges the warrant . . . because 1) Ortiz did not discuss her background, training or experience . . . . The Court finds none of these contentions to be persuasive. . . . As for the lack of specific detail regarding [Ortiz's] computer experience and the transfer of images from the camera to a computer, such detail is also not required"), *aff'd*, 575 F.3d 1191 (11th Cir. 2009).

Herrera also contends that the affidavit provides more detail regarding drug activity at 2225 Glenview Street than at 2232 Tyson Street. The affidavit contained a recitation of suspected narcotics distribution activities connected—directly and indirectly—to both locations. Even if the 2225 Glenview Street property arguably played a more central role in the alleged criminal conduct, the Court is guided by *Whitner* and its progeny. The very most that can be said about the warrant to search 2232 Tyson Street is that it presents a closer call, "the resolution of [which] should be largely determined by the preference to be accorded to warrants." *Whitner*, 219 F.3d at 299 (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). "[A] grudging or negative attitude by reviewing courts towards warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Hodge*, 246 F.3d at 307 (citing *Jones*, 994 F.2d at 1057). Given this preference for warrants, and based upon the totality of the

circumstances described in the affidavit, the judge had a substantial basis for finding probable cause to search 2232 Tyson Street.

## IV.

Even if the issuing judge lacked a substantial basis for finding probable cause, the evidence obtained through the search of 2232 Tyson Street would be admissible under the good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897 (1984). The good faith exception instructs that suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority. *United States v. Williams,* 3 F.3d 69, 74 (3d Cir. 1993). The test for whether the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Hodge*, 246 F.3d at 307 (quotation omitted). The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception. *Leon,* 468 U.S. at 922; *Hodge*, 246 F.3d at 308. The Third Circuit has identified four situations where an officer's reliance on a warrant would be unreasonable and thus not trigger the good faith exception:

> (1) when the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2) when the magistrate abandoned his judicial role and failed to perform his neutral and detached function;
>
> (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Hodge*, 246 F.3d at 308 (citing *Williams*, 3 F.3d at 74 n.4). Herrera argues that the second and third situations apply in this case. (Mot. Suppress 10.) Despite claiming that the second situation

13

applies in his Motion to Suppress, however, Herrera never develops this argument in his motion papers, nor did counsel address it at oral argument. (Mot. Suppress 10-12; Hr'g Tr. 7:14-8:11, 74:7-16.) There is no evidence whatsoever that Judge Anders abandoned his judicial role and failed to perform his neutral and detached function when issuing the warrant for 2232 Tyson Street.

Herrera's contention that the third situation applies circles back to his argument for why the issuing judge did not have a substantial basis to find probable cause—because the "affidavit fails to establish an objectively reasonable nexus between the criminal activity and 2232 Tyson." (Mot. Suppress 11.) Herrera argues that the absence of this nexus makes the affidavit "so lacking in indicia of probable cause" as to render Agent Myers' belief in its existence entirely unreasonable. (*Id*.; Hr'g Tr. 74:12-16.) An affidavit only fits this situation if it is a "bare bones" document. *Hodge*, 246 F.3d at 308; *see also Majeed*, 2009 WL 2393921, at *4 (citing *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d 137, 147 (3d Cir. 2002)). Such affidavits are rarely found, but would include affidavits based "on conclusory assertions, a single piece of outdated evidence, or an uncorroborated or unreliable anonymous tip." *Majeed*, 2009 WL 2393921, at *4 (quoting *United States v. Sarraga-Solana*, 263 F. App'x 227, 231 (3d Cir. 2008)).

In contrast, the affidavit here contains information developed over the course of months leading right up to the application for the warrant (indeed, some of the information was collected on the very day Agent Myers applied for the warrant). While the agents were initially tipped off to investigate Herrera by Rondon-Jose, they corroborated what they learned from Rondon-Jose with information from a reliable CI and their own extensive investigation and surveillance. Agent Myers draws conclusions about Herrera in the affidavit, but these conclusions do not stand

alone—they are accompanied by various other observations and information cultivated by the agents over the course of their investigation. Such an affidavit is by definition not "bare bones," and once the judge made the determination that it presented sufficient indicia of probable cause, it was objectively reasonable for the officers to rely on it. *See Hodge*, 246 F.3d at 309 ("When judgment calls of this kind are required, officers should be able to rely on the magistrate judge's determination of the law.") (quotation omitted); *see also Sarraga-Solana*, 263 F. App'x at 231-32 (holding that the good faith exception applied because "the affidavit at issue in this case was based on current information, collected in the days and weeks leading up to the application for the warrant[ and] based on an extensive investigation and surveillance.").

Agent Myers' affidavit cannot be characterized as being "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See, e.g., United States v. Wallace*, No. 08-cr-52, 2009 WL 1676149, at *5 (E.D. Pa. June 12, 2009) ("This affidavit is not so plainly lacking in probable cause as to render the searching officers' reliance unreasonable. The affidavit does contain the assertion that the C/S was reliable and had provided reliable information in the past, [and] does include purported first-hand observations by the C/S of drugs, drug distribution paraphernalia, and firearms, and the connection between the defendant and the residence to be searched was verified"), *aff'd*, 419 F. App'x 256 (3d Cir. 2011); *see also Majeed*, 2009 WL 2393921, at *4 ("Here, the interpretations of the conversations provide sufficient probable cause to support the warrant. It is unreasonable to expect an officer to resolve the close legal question of whether it was permissible for the issuing judge to rely on the troopers' interpretations to find probable cause.") (citations omitted). Thus, the third situation is not applicable here and the evidence found at 2232 Tyson Street is admissible under the good faith exception.

An appropriate Order follows.

> */s/ Gerald J. Pappert*
> GERALD J. PAPPERT, J.